Michael Jason Lee, Esq. (State Bar No. 206110)
**LAW OFFICES OF MICHAEL JASON LEE, APLC**
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
Telephone: (858) 550-9984
Facsimile: (858) 550-9985
Email: michael@mjllaw.com

Christopher J. Beal, Esq. (State Bar No. 216579)
**DILLON MILLER & AHUJA, LLP**
5872 Owens Avenue, Suite 200
Carlsbad, California 92008
Telephone: (858) 587-1800
Facsimile: (858) 587-2587
Email: cbeal@dmalaw.com

Attorney for Applicant, iFinex Inc.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re Application of*<br><br>iFinex Inc.<br><br>Applicant,<br><br>For the Issuance of a Subpoena for the Taking of a Deposition and the Production of Documents for use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 | Case No.:<br><br>**DECLARATION OF GIANCARLO DEVASINI IN SUPPORT OF APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782** |

I, Giancarlo Devasini, declare:

1. I am the Chief Financial Officer for iFinex Inc. ("iFinex") and have held that position during all relevant times mentioned in the following declaration. I submit this declaration in support of iFinex's Application to Conduct Discovery Pursuant to 28 U.S.C. § 1782, and based on my personal knowledge; the examination of records and documents contained in the files of iFinex and maintained in the regular course of business; and in certain matters and where so indicated, upon information and belief.

**iFinex's Business**

2. iFinex operates a leading global virtual currency platform operating under the brand and trade name of Bitfinex, specifically, on and through www.bitfinex.com. Bitfinex provides a technology platform for customers—both business and individuals—to engage in the trade of digital tokens (e.g., bitcoin and Ethereum) using U.S. dollars, Euros, British pounds, and/or Japanese yen. iFinex is incorporated in the British Virgin Islands.

3. Before using Bitfinex's platform, customers must enter into a contract with Bitfinex agreeing to their terms of service, which are publicly available on the Bitfinex website. Customers wishing to deposit fiat currency—such as U.S. dollars, Euros, British pounds or Japanese yen—on the platform must go through an extensive due diligence process. iFinex also has in place standards to monitor transactions, assess risks, and file Suspicious Activity Reports (commonly referred to as a SAR) and other reports required by applicable law.

4. Customers who want to purchase virtual currency through Bitfinex using fiat currency must first deposit their funds into their Bitfinex account. Once fiat is deposited, they may trade those funds for digital tokens with other users. They may then withdraw those digital tokens. They may, alternately, withdraw unused fiat currency from Bitfinex or fiat currency that is the proceeds from future trading.

5. For these platforms to work, customers depend on iFinex's ability to receive and send fiat currency. This concept is similar, but not the same, to a customer of a U.S. financial institution having access to her money from a branch, on demand.

6. Until early 2017, customers who sought to deposit fiat currency into their Bitfinex account could do so by interbank wire transfer, transferring funds from their own bank accounts into certain bank accounts held by iFinex in Taiwan. In early 2017, however, certain U.S. banks successfully pressured iFinex's Taiwanese banks into discontinuing this arrangement.

7. Without a readily available banking solution, iFinex turned to a third-party payment processor doing business as "Crypto Capital."

**iFinex's Agreement with Crypto Capital**

8. Crypto Capital marketed itself as enabling its customers to deposit and withdraw fiat funds instantly to certain virtual currency exchanges including, at the time, Bitfinex. In late 2014, Crypto Capital agreed to act as a payment processor[1] for the Bitfinex exchange, although the large majority of processing activity did not commence until 2017. That is, when Bitfinex customers sought to deposit fiat currency into their Bitfinex accounts, Bitfinex would provide customers with banking details to which the deposits were to be remitted by bank wire, as well as certain identifiers to include in the wire details. Crypto Capital represented that the accounts receiving customer deposits were owned and operated by Crypto Capital or its related entities.

9. Once Crypto Capital received funds transmitted, it would use the identifier to allocate deposits to a Bitfinex account and communicate receipt of the deposit to Bitfinex. Generally, Bitfinex would log onto the Crypto Capital platform to confirm that the wire was received and approve the deposit receipt. At that point, the funds were made available to the Bitfinex customer on the Bitfinex platform. Pursuant to the parties' agreement, Crypto Capital would hold these funds on behalf of Bitfinex, but would also transfer funds to Bitfinex on demand.

10. Customer withdrawals processed by Crypto Capital were handled similarly. A Bitfinex customer would submit a withdrawal request to Bitfinex. Bitfinex would log onto the Crypto Capital platform and fill in the beneficiary details provided by the customer. Bitfinex would then approve the

[1] Broadly speaking, a "payment processor" is a third party that facilitates financial transactions between parties.

withdrawal request and Crypto Capital would settle the withdrawal by remitting the funds to the Bitfinex customer from a bank account owned by Crypto Capital.

11. As part of the parties' agreement, besides a nominal fee for each deposit or withdrawal, Crypto Capital charged no fee for these services to iFinex because it was able to earn substantial interest on the funds it held on iFinex's behalf in its accounts. Crypto Capital's agreement to act as a payment processor was made by one of its principals—an individual who identified himself to me as Oz "Joseph." In 2019, I learned that Mr. Joseph's last name was actually "Yosef." Yosef was my primary contact at Crypto Capital and I had numerous communications with him by phone and text from the 2017 through early 2019.

**iFinex Begins to Discover Crypto Capital's Malfeasance**

12. From early 2017 through late 2018, Bitfinex customers transferred more than $1.5 billion to various bank accounts purportedly held or controlled by Crypto Capital. By July 2018, the amount Crypto Capital held and owed to iFinex exceeded $1 billion. I believe there were largely two reasons for this large balance: (1) an increasing interest in virtual currency trading and investment, leading to increasing amounts being transferred by Bitfinex customers; and (2) institutional constraints on the amount of funds that could be transferred between Crypto Capital accounts and iFinex's bank accounts.

13. Our relationship with Crypto Capital generally operated well. In or about March or April 2018, however, we learned from news reports that Crypto Capital funds had been seized by authorities in Poland as part of an investigation into potential money-laundering. At the time, Yosef acknowledged to me that Crypto Capital's Polish bank accounts had been frozen, but claimed that none of iFinex's funds were affected by these actions.

14. In or about late August 2018, however, Yosef began representing to me that approximately $500 million of Bitfinex funds in both Poland and Portugal were being "held up" by regulators in both countries. From then through November 2018, Yosef repeatedly reassured me that the Bitfinex funds held in Poland and Portugal were on the verge of being released and that Crypto Capital was working diligently with local authorities to secure their release.

15. In response to increasing pressure from iFinex and its attorneys for specific information concerning the banking accounts that had been purportedly frozen, Yosef began providing additional information in the latter part of 2018.

**Current, Ongoing Foreign Proceedings Involving iFinex**

16. According to Crypto Capital, approximately $355,000,000 of iFinex's funds are being held in various currencies that were on deposit in accounts at Bank Spoldzielczy in Skierniewice, Poland. According to Crypto Capital, approximately $218,000,000 of Plaintiffs' funds are being held in various currencies in accounts at three separate Portuguese banks: Banco Português de Investimento, Bankinter, S.A., and Caixa Geral de Depositos SA.

17. Since these and other subsequent disclosures, as well our own further investigation, we have been able to confirm that the National Prosecutor's Office in Poland has seized certain funds held by Crypto Capital in Bank Spoldzielczy. iFinex has filed a claim with the Prosecutor's Office as an "Injured Party" seeking to recover funds that Crypto Capital held in Poland on their behalf. iFinex also filed a civil claim against a Polish entity affiliated with Crypto Capital that was the authorized holder of the accounts at issue located in Poland. Additionally, iFinex filed two criminal notifications against the representatives of the Polish entity affiliated with Crypto Capital concerning fraud and appropriation.

18. With respect to the funds held in the Portuguese banks identified above, we have not been able to confirm that such funds have been "frozen" by any appropriate authorities.

19. We have also learned that Crypto Capital maintained accounts with HSBC Bank PLC ("HSBC UK") in the United Kingdom. iFinex anticipates bringing a subsequent suit in the United Kingdom in order to recover the funds.

20. Based on my communications with Yosef, and to the best of our understanding of the limited banking records he has provided, Crypto Capital did not simply receive customer deposits into its various banking accounts and maintain those deposits with the initial bank receiving those funds. Rather, Crypto Capital subsequently transferred funds between and among various banks, including in Europe and the United States. In the U.S. alone, we have information that Crypto Capital used

accounts held not only at Citibank, but also Bank of America, Bank of Colorado, Enterprise Bank & Trust, HSBC, Stearns Bank, Sun Trust, TD Bank, US Bank, and Wells Fargo.

21. Thus, in order to demonstrate iFinex's ownership of, and entitlement to, the various funds held in Poland, Portugal, and the United Kingdom, iFinex must be able to trace the funds deposited by its customers through the fund transfers between and among the various banking accounts operated or used by Crypto Capital. iFinex also seeks information regarding the ownership and use of the accounts at issue, as well as communications between the banks and account holders and/or their representatives.

**Crypto Capital's Use of Citibank Banking Accounts**

22. From approximately April to June 2018, Crypto Capital used a bank account ending in -9503 with Citibank to accept deposits from Bitfinex customers. The account was held in the name of Global Trading Solutions, LLC. Because the name of this LLC was similar to that of the entity that then owned Crypto Capital (Global Trade Solutions AG), we believed the LLC to be an entity related to Crypto Capital.

23. According to Crypto Capital, the Citibank account ending in 9503 was opened at the Citibank branch located at 17400 Brookhurst Street, Fountain Valley, California 92708. The address given by Global Trading Solutions, LLC to Citibank was 221 Main Street, Suite S, Huntington Beach, California 92648.

24. Since December 2018, we have subsequently learned through iFinex's investigation and review of its corporate filings that Global Trading Solutions, LLC is wholly owned by an individual named Reginald Dennis Fowler. Prior to December 2018, neither Yosef nor Crypto Capital had ever revealed Mr. Fowler's involvement in its operations. Yosef only admitted as much to me in or about late December 2018 and thereafter.

25. Attached hereto as **Exhibit "A"** is a copy of the categories of documents that iFinex currently intends to seek from Citibank.

26. As noted above, the Citibank account ending in 9503 was opened at the Citibank branch located at 17400 Brookhurst Street, Fountain Valley, California 92708. As also noted above, the address given by Global Trading Solutions, LLC to Citibank was 221 Main Street, Suite S, Huntington Beach, California 92648. Both addresses are in Orange County, California.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed this 18th day of October 2019, at MILAN - ITALY.

Giancarlo Devasini

# EXHIBIT "A"

# EXHIBIT "A"

## DEFINITIONS

The following definitions are to be used with respect to these documents:

A. The "ACCOUNT" shall mean and refer to Citibank, N.A. Account Number 000207129503.

B. "OTHER ACCOUNTS" shall mean and refer to any Citibank, N.A. account held in the name of Global Trading Solutions, LLC as well as any account held in the name of FOWLER or for which FOWLER is a signer and/or authorized individual.

C. "ALL" shall mean each, any and all.

D. "BANK RECORDS" shall mean and refer to account statements, signature cards, account applications, and any other DOCUMENT evidencing deposits, withdrawals, balances and/or other account activity.

E. "COMMUNICATION(S)" shall mean any dissemination of information by transmission or a statement from one person to another or in the presence of another, whether by writing, orally or by action or conduct, including but not limited to, written notes, electronic communications with attachments, verbal conversations and visual notations.

F. "DOCUMENT" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 34(a), and shall mean any and all information in tangible or other form, whether printed, typed, recorded, computerized, filmed, reproduced by any process or written or produced by hand, and whether an original, draft, master, duplicate or copy, or notated version thereof, that is in your possession, custody or control. A draft or non-identical copy is a separate document within the meaning of this term.

G. "DOCUMENT" as used in this Subpoena shall also include, but not be limited to, electronic files, other data generated by and/or stored on or through any of your computer systems and storage media (e.g., internal or external hard drives, CD-ROM's, floppy disks, backup tapes, thumb drives, internet-based posting boards or any other data storage media or mechanisms) or any other electronic data. This includes, but is not limited to: email and other electronic communications (e.g., postings to internet forums, ICQ or any other instant messenger messages, and/or text messages); voicemails; word processing documents; spreadsheets; databases; calendars; telephone logs; contact manager information; Internet usage files; offline storage or information stored on removable media; information contained on laptops or other portable devices; and network access information. Further, this includes data in any format for storing electronic data.

H. "CRYPTO CAPITAL" shall mean and refer to Crypto Capital, and its subsidiaries, officers, directors, employees, agents, managers, members, attorneys, accountants, investigators, representatives and anyone else acting on its behalf.

  I. "CRYPTO CAPITAL CORP" shall mean and refer to Crypto Capital Corp, and its subsidiaries, officers, directors, employees, agents, managers, members, attorneys, accountants, investigators, representatives and anyone else acting on its behalf.

  J. "FLETCHER" shall mean and refer to Diana Fletcher, and her employees, agents, attorneys, accountants, investigators, representatives and anyone else acting on his behalf.

  K. "FOWLER" shall mean and refer to Reginald Dennis Fowler, and his employees, agents, attorneys, accountants, investigators, representatives and anyone else acting on his behalf.

  L. "T. FOWLER" shall mean and refer to Trent Dennis Fowler, and his employees, agents, attorneys, accountants, investigators, representatives and anyone else acting on his behalf.

  M. "GTS SWITZERLAND" shall mean and refer to Global Trade Solutions AG, and its subsidiaries, officers, directors, employees, agents, managers, members, attorneys, accountants, investigators, representatives and anyone else acting on its behalf.

  N. "GTS US" shall mean Global Trading Solutions LLC, and its subsidiaries, officers, directors, employees, agents, managers, members, attorneys, accountants, investigators, representatives and anyone else acting on its behalf.

  O. "GTS UK" shall mean and refer to G.T.S. Resources Limited, and its subsidiaries, officers, directors, employees, agents, managers, members, attorneys, accountants, investigators, representatives and anyone else acting on its behalf.

  P. "IDENTIFY," with respect to banking account information, means to provide (a) the vesting/full name on the account, (b) account number, (c) names of authorized signers on the account, (d) address of bank branch where each account was opened, and (e) date each account was opened.

  Q. "IFINEX" shall mean and refer to iFinex Inc. and its subsidiaries, officers, directors, employees, agents, managers, members, attorneys, accountants, investigators, representatives and anyone else acting on its behalf.  For the purposes of this definition, it shall also include and otherwise cover the commonly referred to trade name Bitfinex and its corresponding website address at bitfinex.com.

R.  "IWANAGA" shall mean and refer to Katsuyoshi Iwanaga, and his employees, agents, attorneys, accountants, investigators, representatives and anyone else acting on his behalf.

S.  "MOLINA" shall mean and refer to Ivan Manuel Molina Lee, and his employees, agents, attorneys, accountants, investigators, representatives and anyone else acting on his behalf.

T.  "MONROE" shall mean and refer to Rondell "Rhon" Clyde Monroe, and his employees, agents, attorneys, accountants, investigators, representatives and anyone else acting on his behalf

U.  "NLE" shall mean and refer to NLE Consulting Group, and its subsidiaries, officers, directors, employees, agents, managers, members, attorneys, accountants, investigators, representatives and anyone else acting on its behalf.

V.  "O. YOSEF" shall mean and refer to Ozzie Yosef a/k/a Ozzie Joseph, and his employees, agents, attorneys, accountants, investigators, representatives and anyone else acting on his behalf.

W.  "R. YOSEF" shall mean and refer to Ravid Yosef, and her employees, agents, attorneys, accountants, investigators, representatives and anyone else acting on his behalf.

X.  "SPIRAL" shall mean and refer to Spiral Global Development Limited, and its subsidiaries, officers, directors, employees, agents, managers, members, attorneys, accountants, investigators, representatives and anyone else acting on its behalf.

Y.  "STAFFORD" shall mean and refer to David Anthony Stafford, and his employees, agents, attorneys, accountants, investigators, representatives and anyone else acting on his behalf.

Z.  "TCA BANK" shall mean and refer to TCA Investment Bancorp & Trust Company and its subsidiaries, officers, directors, employees, agents, managers, members, attorneys, accountants, investigators, representatives and anyone else acting on its behalf

AA.  "YOU" shall mean and refer to Citibank, N.A., and your subsidiaries, officers, directors, employees, agents, managers, members, attorneys, accountants, investigators, representatives and anyone else acting on your behalf.

BB. The singular shall include the plural, and the plural shall include the singular. The conjunctive "and" shall include the disjunctive "or" and the disjunctive "or" shall include the conjunctive "and."

CC. Each Document produced shall be produced as it is kept in the usual course of business (i.e., in the file folder or binder in which such Documents were located when the request was served) or shall be organized and labeled to correspond to the categories of Documents requested.

DD. You are instructed to produce any and all Documents which are in your possession, custody or control. Possession, custody or control includes constructive possession whereby you have a right to compel the production of a matter from a third party (including an agency, authority or representative).

EE. To the extent the location of any Document called for by this Exhibit is unknown to you, so state. If any estimate can reasonably be made as to the location of an unknown Document, describe the Document with sufficient particularity so that it can be identified, set forth your best estimate of the Document's location, and describe the basis upon which the estimate is made.

FF. If any Document request is deemed to call for disclosure of proprietary data, counsel for movant is prepared to receive such data pursuant to an appropriate confidentiality order.

GG. To the extent the production of any Document is objected to on the basis of privilege, provide the following information about each such document: (1) describe the nature of the privilege claimed (e.g., attorney-client, work product, etc.); (2) state the factual and legal basis for the claim of such privilege (e.g., communication between attorney for corporation and outside counsel relating to acquisition of legal services); (3) identify each person who was present when the document was prepared and who has seen the Document; and (4) identify every other Document which refers to or describes the contents of such Document.

HH. If any document has been lost or destroyed, the Document so lost or destroyed shall be identified by author, date, subject matter, date of loss or destruction, identity of person responsible for loss or destruction and, if destroyed, the reason for such destruction.

II. The relevant period of time for purposes of this Subpoena is from November 1, 2016, through the present, unless otherwise specified below.

## ITEMS TO BE PRODUCED

1. ALL BANK RECORDS for the ACCOUNT.

2. ALL BANK RECORDS for OTHER ACCOUNTS.

3. ALL COMMUNICATIONS concerning, referring to or relating to the ACCOUNT.

4. ALL COMMUNICATIONS concerning, referring to or relating to OTHER ACCOUNTS.

5. ALL COMMUNICATIONS between or among YOU and/or CRYPTO CAPITAL, CRYPTO CAPITAL CORP, FOWLER, T. FOWLER, GTS SWITZERLAND, GTS UK, GTS US, MOLINA, NLE, O. YOSEF, R. YOSEF, SPIRAL, and/or TCA BANK.

6. ALL COMMUNICATIONS between or among YOU and/or FLETCHER, IWANAGA, MONROE, and/or STAFFORD concerning, referring to or relating to CRYPTO CAPITAL, CRYPTO CAPITAL CORP, FOWLER, T. FOWLER, GTS SWITZERLAND, GTS UK, GTS US, MOLINA, NLE, O. YOSEF, R. YOSEF, SPIRAL, and/or TCA BANK.

7. ALL COMMUNICATIONS in YOUR possession, custody, or control that were sent to or received from any banking institution concerning the transfer of funds to or from CRYPTO CAPITAL, CRYPTO CAPITAL CORP, FOWLER, T. FOWLER, GTS SWITZERLAND, GTS UK, GTS US, MOLINA, NLE, O. YOSEF, R. YOSEF, SPIRAL, and/or TCA BANK.

8. ALL DOCUMENTS concerning, referring to, or relating to the transfer of funds to or from CRYPTO CAPITAL, CRYPTO CAPITAL CORP, FOWLER, T. FOWLER, GTS SWITZERLAND, GTS UK, GTS US, MOLINA, NLE, O. YOSEF, R. YOSEF, SPIRAL, and/or TCA BANK.

9. DOCUMENTS sufficient to IDENTIFY ALL banking accounts owned, controlled, or relating to CRYPTO CAPITAL, CRYPTO CAPITAL CORP, FOWLER, T.

FOWLER, GTS SWITZERLAND, GTS UK, GTS US, MOLINA, NLE, O. YOSEF, R. YOSEF, SPIRAL, and/or TCA BANK.

10. ALL COMMUNICATIONS in YOUR possession, custody, or control concerning, referring to, or relating to IFINEX or Bitfinex.

11. ALL DOCUMENTS constituting any agreements, contracts, arrangements, understandings or confirmations with CRYPTO CAPITAL, CRYPTO CAPITAL CORP, FOWLER, T. FOWLER, GTS SWITZERLAND, GTS UK, GTS US, MOLINA, NLE, O. YOSEF, R. YOSEF SPIRAL, and/or TCA BANK.

12. ALL DOCUMENTS reflecting any transfer of funds – whether by wire transfer or otherwise – to or from CRYPTO CAPITAL, CRYPTO CAPITAL CORP, FOWLER, T. FOWLER, GTS SWITZERLAND, GTS UK, GTS US, MOLINA, NLE, O. YOSEF, R. YOSEF, SPIRAL, and/or TCA BANK.

13. ALL COMMUNICATIONS in YOUR possession, custody, or control, with any bank, financial institution, or other company or individual concerning or relating to CRYPTO CAPITAL, CRYPTO CAPITAL CORP, FOWLER, T. FOWLER, GTS SWITZERLAND, GTS UK, GTS US, MOLINA, NLE, O. YOSEF, R. YOSEF, SPIRAL, and/or TCA BANK.

14. ALL DOCUMENTS constituting any agreements, contracts, arrangements, understandings or confirmations with any bank, financial institution, or other company or individual concerning or relating to CRYPTO CAPITAL, CRYPTO CAPITAL CORP, FOWLER, T. FOWLER, GTS SWITZERLAND, GTS UK, GTS US, MOLINA, NLE, O. YOSEF, R. YOSEF, SPIRAL, and/or TCA BANK.

15. ALL BANK RECORDS in YOUR possession, custody, or control that concern or relate to CRYPTO CAPITAL, CRYPTO CAPITAL CORP, FOWLER, T. FOWLER, GTS SWITZERLAND, GTS US, GTS UK, MOLINA, NLE, O. YOSEF, R. YOSEF, SPIRAL, and/or TCA BANK.